**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v. CRIMINAL ACTION NO. 2:19-cr-00142

JEFFERY EARNEST MOLLOHAN,

Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Defendant's Motion to Suppress Evidence Seized on May 17, 2018* (Document 28), the *Defendant's Memorandum in Support of Motion to Suppress Evidence Seized on May 17, 2018* (Document 32), and the *Response of the United States to Defendant's Motion to Suppress Evidence* (Document 33). On October 8, 2019, the Court held a hearing on the motion to suppress. Based on the above-mentioned documents and the evidence presented during the hearing, the Court finds that the evidence seized on May 17, 2018, should be suppressed.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 17, 2018, Officer Cooper responded to a call about a vehicle at the Charleston Arbors apartment complex, located at 100 Washington Street East in Charleston, West Virginia. The caller reported that a black car pulled into the parking lot, and the driver had been sitting in the car for about ten minutes after pulling in.[1] (Document 48-1.) Officer Cooper testified that

1 Officer Cooper originally remembered the dispatch call as a tip about drug dealing, but after reviewing the records, he amended his recollection of the event. The Court notes that there are several credibility issues with the Officer's

he had responded to a lot of calls in this area. When Officer Cooper arrived at the scene, he noticed a vehicle sitting in the back part of the parking lot that matched the description from the dispatch call. The lights of the vehicle were off, and it was parked next to another car. Officer Cooper testified that he pulled ten to fifteen yards in front of the vehicle, "cater-cornered" to it, and put his spotlight on the vehicle.[2] He did not wait for back up before approaching the vehicle, because he "wanted to speak with them before they had more time to think about whether they would run or drive away."

As Officer Cooper approached the car, he saw people moving around inside the vehicle. The two front windows were rolled down, the two rear windows were rolled up and the motor was running. Officer Cooper testified that upon arriving at the front window, he saw cash in the hands of all three individuals inside the car.[3] Officer Cooper then asked the Defendant, "What are you doing?" The Defendant replied that he was picking up a friend from the apartment complex. Officer Cooper testified that when he asked the Defendant who his friend was, the Defendant hesitated for about five to ten seconds before providing a name. Officer Cooper also testified that the Defendant appeared nervous—he was shaky, breathing heavily, and avoided eye contact. Then Officer Cooper asked the Defendant if there were any guns in the car. The Defendant looked around the car to the other passengers before answering no. After the Defendant said there were

testimony. However, given the analysis necessary to determine seizure, the factual testimony which presents credibility issues does not serve as part of the basis for the Court's finding.

2 The caller reported that the vehicle was located on the Clendenin Street side of the parking lot. Officer Cooper testified that "there was plenty of room for Mollohan to go around if he had wanted to." However, based on the Government's Exhibit No. 1, this area of the parking lot has ten parking spaces located on either side of a narrow driveway. Pulling cater-cornered to a car parked in one of the spaces would essentially block an exit path.

3 This fact was not in the original police report. Instead, this fact was added after the United States Attorney's Office asked Officer Cooper to supplement his police report on June 14, 2019—over a year after the incident occurred. Officer Cooper also testified that if the then assigned Assistant United States Attorney "hadn't asked for the supplement, it wouldn't have been supplemented." Corporal Welsh was unable to corroborate the presence of cash and the United States did not present property receipts or other corroborating evidence.

no guns in the car, Officer Cooper testified that he didn't think the Defendant was "being straight" with him, so he asked him to step out of the car for officer safety.

As Officer Cooper was removing the Defendant from the car, Corporal Welsh arrived on the scene. Corporal Welsh approached the vehicle and saw what appeared to be the handle of a gun sticking out of a pile of clothes in the back seat. Corporal Welsh advised Officer Cooper that there was a gun on the back seat and ordered the passenger in the back seat not to reach for the weapon. At that point, the other passengers were removed from the car and detained. A 25-caliber firearm was removed from the back seat. Officer Cooper then asked the Defendant if he could search the vehicle. The Defendant agreed. The search revealed a rifle in the trunk of the car. Officer Cooper ran a criminal history report and discovered that the Defendant had a prior felony. Officer Cooper testified that the Defendant told him that he was a convicted felon and was not allowed to possess a firearm.[4]

On May 29, 2019, an Indictment was filed against the Defendant, charging him with Possession of a Firearm by a Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On May 23, 2019, the Defendant filed a motion to suppress the evidence seized on or about May 17, 2018. A memorandum in support of the motion to suppress was filed on September 30, 2019, and the United States filed its response in opposition to the motion to suppress on October 4, 2019.

4 There is some confusion as to the timeline here. Initially, Officer Cooper testified that the Defendant uttered that he was a felon and could not possess firearms when he was asked to get out of the car. Subsequently, the Officer testified that the Defendant said he could not possess firearms and that Officer Cooper asked him, "why not?" prior to reading him his Miranda rights. The police report does not mention this verbal exchange.

## DISCUSSION

*A. Fourth Amendment Seizure*

The Fourth Amendment to the Constitution prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Under the Fourth Amendment, police officers are allowed to approach individuals in public places and ask them questions, "so long as a reasonable person would understand that he or she could refuse to cooperate." *Florida v. Bostick*, 501 U.S. 429, 431 (1991). Under those circumstances, the police encounter is "consensual and no reasonable suspicion is required." *Id.* at 434.

A seizure occurs, however, once a reasonable person would no longer believe he or she is free "to disregard the police and go about their business." *Id.* at 433 (quoting *California v. Hodari D.*, 499 U.S. 621, 269 (1991)). The test is whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (plurality op.).

> A court considers a number of factors in determining whether an officer's conduct would convey to a reasonable person that he is not free to leave. These include, but are not limited to, the number of police officers present during the encounter, whether they were in uniform or displayed their weapons, whether they touched the defendant, whether they attempted to block his departure or retrain his movement, whether the officers' questioning was non-threatening, and whether they treated the defendant as though they suspected him of illegal activity rather than treating the encounter as routine in nature.

*United States v. Jones*, 678 F.3d 293, 299 (4th Cir. 2012) (quoting *United States v. Gray*, 883 F.2s 320, 322−23 (4th Cir. 1989)).

As an initial matter, Officer Cooper parked his patrol car cater-cornered to the Defendant's car, in a manner suggesting that the Defendant was not free to drive off. The Fourth Circuit has

held that blocking a defendant's car in order to effectuate an encounter constitutes a Fourth Amendment seizure. *United States v. Jones*, 678 F.3d 293, 301 (4th Cir. 2012).[5] Officer Cooper testified that he parked approximately ten to fifteen yards away from the vehicle, cater-cornered to the front of the Defendant's car and that there would have been "plenty of room for Mollohan to go around if he had wanted to." However, the Court's review of the parking lot layout reveals that there would have been very little room for the Defendant to navigate around a police cruiser parked cater-cornered to the Defendant's car. (Gov.'s Ex. 1.) The officer pulled up to the Defendant's car in a marked police cruiser, parked cater-cornered to it in a way that impeded an

---

5 In *Jones*, the Fourth Circuit relied on an extensive body of case law to support its holding:

> *See, e.g., United States v. See,* 574 F.3d 309, 313 (6th Cir.2009) ("Given the fact that [the officer] blocked [the defendant's parked] car with his marked patrol car, a reasonable person in [his] position would not have felt free to leave."); *United States v. Kerr,* 817 F.2d 1384, 1386–87 (9th Cir.1987) (reversing district court's holding that police blockage of defendant, who could have driven around the police car, was not detention because officer "[a]rriving in uniform and in a marked patrol car ... unquestionably appeared to be acting in an official capacity" and, "[i]nstead of waiting ... at the roadside," blocked defendant's car "thus precipitat[ing] the confrontation"); *Riley v. State,* 892 A.2d 370, 374 (Del.2006) (concluding that "when police approached [defendant's car] with their badges and flashlights, after having parked their police vehicle ... so as to prevent [defendant] from driving away, a seizure had taken place for purposes of Fourth Amendment analysis"); *Commonwealth v. Helme,* 399 Mass. 298, 503 N.E.2d 1287, 1288 (1987) (finding investigatory stop occurred when officer "parked the police cruiser so as to block the defendant's [parked] automobile and prevent it from leaving the parking lot"); *State v. Roberts,* 293 Mont. 476, 977 P.2d 974, 977, 979 (1999) (holding seizure occurred when officer, "armed and in uniform," followed defendant's car without activating lights or sirens, blocked the car from backing out of a driveway, and made an additional "show of authority in immediately exiting his patrol car and approaching" defendant who had exited his car simultaneously and was standing by the car door); *State v. Garcia–Cantu,* 253 S.W.3d 236, 246 & n. 44 (Tex.Crim.App.2008) (relying on fact that officer "parked his patrol car" such that it " 'boxed in' [defendant's] parked truck, preventing him from voluntarily leaving" and noting that "[m]ost courts have held that when an officer 'boxes in' a car to prevent its voluntary departure, this conduct constitutes a Fourth Amendment seizure"); *State v. Jestice,* 177 Vt. 513, 861 A.2d 1060, 1063 (2004) ("[W]hen a police cruiser completely blocks a motorist's car from leaving, courts generally find a seizure.... [T]he fact that it was possible for the couple to back and maneuver their car past the patrol car and out of the trailhead parking lot does not convince us that this was a consensual encounter...."); *McChesney v. State,* 988 P.2d 1071, 1075 (Wyo.1999) (noting fact that officer "blocked in" defendant's car has "been found sufficient to constitute a seizure").

678 F.3d at 301–02.

exit, put a spotlight on the car, and approached the vehicle in police uniform. Given these undisputed facts, no reasonable person would have felt free to leave at that point.

Moreover, Officer Cooper testified that he got out of the police cruiser and approached the Defendant's vehicle prior to the arrival of another officer so that he could make an encounter "before they had more time to think about whether they would run or drive away." It was therefore his explicit intention to prevent the Defendant from leaving the scene. *Jones*, 678 F.3d at 296 (suppressing the evidence based, in part, on the fact that the "detective believed that he had no option other than to park where he did to ensure that he would have the opportunity to make contact with the occupants of the out-of-state vehicle") (internal quotation marks and brackets omitted).

The circumstances in this case demonstrate the requisite showing of authority to make a reasonable person think that they were not free to avoid the police encounter. As such, a seizure occurred when Officer Cooper arrived at the scene, parked and approached the vehicle. However, the Court's inquiry does not end there. The Court must also determine whether the seizure was nevertheless lawful.

*B. Reasonable Suspicion*

Once an encounter is no longer consensual, it triggers Fourth Amendment scrutiny. *United States v. Wilson*, 953 F.2d 116, 121 (4th Cir. 1991). "Police-citizen encounters that are consensual require no justification, but those that are not consensual impose a detention on a citizen and so must be supported by an officer's reasonable, articulable suspicion" that a person is engaged in criminal activity. *United States v. Jones*, 678 F.3d 293, 299 (4th Cir. 2012). The reasonable suspicion "must be based on specific, objective facts, an inchoate and unparticularized suspicion

or hunch will not suffice." *United States v. Williams*, 615 F.3d 657, 666 (6th Cir. 2010) (quoting *Brown v. Texas*, 443 U.S. 47, 51 (1979) and *Terry v. Ohio*, 392 U.S. 1, 27 (1968)) (internal quotation marks and citations omitted). The totality of the circumstances must be considered to determine whether an officer had reasonable suspicion. *United States v. Arvizu*, 534 U.S. 266, 274 (2002). Without such reasonable suspicion, seizure is unlawful.

In this case, there was not "reasonable, articulable suspicion" to warrant the initial detention. *Jones*, 678 F.3d at 295 (noting that reasonable suspicion did not exist when the "only asserted suspicious activity [the officers] saw was the car's presence in a high-crime neighborhood with out-of-state tags"). The dispatch call reported that a car had been parked in the parking lot for about ten minutes and the driver had not yet emerged. However, sitting in a parked car is legal and, without more, does not provide sufficient basis for suspicion that a person is engaged in criminal activity. The only facts supporting suspicion at the moment of seizure were the dispatch call, the fact that a car matching the description from the call was parked in a dark corner of the parking lot with its lights turned off, away from the entrance of the apartment building, and the fact that Officer Cooper had responded to a lot of calls in that area. There are no other facts suggesting illegal activity. Viewing the totality of the circumstances, the facts presented in this case do not substantiate an articulable, reasonable suspicion of illegal conduct.

Accordingly, the Court finds that there was not reasonable suspicion based on specific, objective facts, and the seizure was not lawful. Thus, the evidence seized as a result of the encounter should be suppressed.[6]

6 Although the Government briefly argued "inevitability" at the conclusion of the hearing, the Court finds it unnecessary to address the same inasmuch as the Officer's knowledge of an outstanding warrant came as a result of the unlawful detention.

## CONCLUSION

Wherefore, after careful consideration, the Court **ORDERS** that the *Defendant's Motion to Suppress Evidence Seized on May 17, 2018* (Document 28) be **GRANTED** and all evidence obtained following the unlawful detention, including the conversation and the search, shall be suppressed.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: October 15, 2019

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA